The first case on our docket this morning is 525.0228 McKinney v. Kamm, and our new deputy appellant is Mr. Steele, right? Right. Okay. You may begin when you are ready. I am ready. Thank you. Good morning. Good morning. This case is about the distribution of proceeds of the settlement of a welfare death case and the use of the conflict of laws of L.A. to arrive at a decision as to distribution. William Steele died from mesothelioma caused by asbestosis, leaving two daughters, Kelly Kamm, the appellant, and Amy McKinney, the appellee. A hearing was held in the Circuit Court for Madison County, and in applying L.A. law to the distribution, assigned 100% of the proceeds to the appellee. Our contention is that the court erred in applying L.A. law to the distribution of the proceeds, and that, in fact, it should have applied Alabama law. L.A. law uses the restatement second of the conflict of laws in making these determinations. I guess maybe the first question is, why is it necessary to apply the conflict of laws at all? The case was settled in Illinois. The hearing was held in Illinois with regard to distribution of the proceeds. But our contention is that under the restatement, Section 145 in particular, each issue in a tort case is to receive separate consideration. Section 145 in the case we cited in our brief, Townsend v. Sears, Roebuck & Company, points to Section 145, authorizes the process of deprecage to consider different issues in a tort case and apply different law to those issues if necessary. Whether or not Illinois law is applied in determining the damages was irrelevant. That's a separate issue. The issue we're concerned with is the distribution of those proceeds. And our position is that separate consideration must be given to determining the distribution of the proceeds. Under Illinois choice of law rules, we use the most significant relationship test. And in doing so, the first step then is to choose the preceptively applicable law. Under Section 175 of the restatement, there is a strong presumption that the law of the state where the injury occurs governs. So then the question is, where did the injury occur? Is death an injury? Well, there are a couple of possibilities, and it certainly is. Are you going to tell me it isn't? No, I believe that it is, in fact. And he was in Alabama when he died. He lived in Alabama. He was an Alabama resident. He had virtually no contact with the state of Illinois that we know of. It's also where he began having the symptoms of mesothelioma. And we've cited in our brief a couple of cases that stand for the proposition that it's where the victim, in this case, starts to suffer the injury. It's where the injury occurs. So, for example, in the Curtis decision, a decision from the Northern District, and admittedly, that's not precedent, but it is, I think, persuasive. Why do we need to go to the Northern District in a case like this? Well, there are actually very few that we can find state cases, Illinois state cases, directly on par with regard to where's the injury? And so that's why we went to the Northern District, because that is a case that is applicable to our fact situation. And in that case, there was a federal prisoner being transported from, I believe, Kansas to Indiana. In driving through Illinois, first began suffering the symptoms of heat stroke, died in Indiana, and the Northern District court determined that it was Illinois where the injury first occurred in that case. It applied Comment B of Section 175 of the Restatement. We've also cited a Missouri case, Natalie, which was a malpractice case in which the malpractice occurred in Missouri. But the victim in that case, the plaintiff, began suffering the symptoms of his cancer in Kansas. And as the court pointed out, all the while he was in Kansas, the cancer kept getting worse and worse and worse. And in that case, the court ruled that the state of injury was Kansas. It also pointed out that Kansas, in that case, was the state where the decedent had a settled relationship. In this case, certainly no one is suggesting that Mr. Steeves had any kind of personal relationship with the state of Illinois. That's simply not the case. In this case, the trial court made a finding that the personal injury was different than a wrongful death case. Is that really true for both persons of this matter? It is not, and I thank you for bringing that up. It is different. So you think it is different? Well, as I understand the appellee's argument, it says Section 175 does not apply to the distribution of proceeds of a wrongful death case. Section 177 actually specifically says that 175 applies to the distribution of proceeds of a wrongful death case. So, in fact, the restatement applies to wrongful death cases, certainly. And maybe I'm not understanding you. What about Section 146? How do you think that's applicable, if at all? Well, that goes to the second step, I think. The first step is determining whether the place of injury occurred, and that sets up a very strong presumption that that is the state whose law applies. Section 6 and Section 145 of the restatement go to the second issue, which is, does Illinois have a more significant relationship to the parties and the occurrence than Alabama, in this case, the place of injury? And while Section 6 and 145 do have a role to play, it's in terms of, do you rebut the presumption, the very strong presumption that Alabama law applies? And you look at a number of factors under Section 6 and 145. In this case, the place where the injury occurred, again, Alabama. The place where the conduct occurred. What conduct do you think occurred? When you say the conduct occurred. Well, presumably, that refers to the exposure to the asbestos. I'm sorry. I'm sorry. I was just going to change that. There wasn't a lot of exposure in Alabama. No. And not in Illinois. The complaint indicates that some of the acts leading to the eventual distribution of the asbestos, and I'm paraphrasing, obviously. Some of it occurred in Illinois. That was the allegation of the complaint. How much? I don't know. That's really not in the record. But isn't that how in all of these cases in Illinois that they usually add, I think, the John Crane Company or somebody like that to find jurisdiction in this state by adding the Illinois defendants? Certainly. But again, that goes to jurisdiction. It also goes to... But the conduct that you refer to then occurs in Illinois. So there is a relationship between the conduct and the development of mesothelioma, if you will. I would say it's, again, according to the complaint, some of the conduct allegedly occurred in Illinois. Does it have to be more than some? Does it have to be all, a certain percentage? It's a factor to be considered along with the other factors in Section 145. Right. Now, if 90% of the conduct occurred in Illinois, that would be one thing. But certainly we have no reason to think that that's the case. We don't know how much conduct occurred in Illinois. But if you have some conduct in Illinois and you have no conduct in Alabama and you have conduct in other states, but nobody's asking for relief in those other states, what is the trial court to do? The trial court is to determine first where the place of injury was because that sets up the presumption. And it's a very strong presumption. Well, that's why I asked. Is injury death or is it this conduct that we're talking about? Injury is death. That's where it occurred in Alabama. Okay. It's also where the symptoms occurred, which is in line with the other cases we cited in our brief. So even if you didn't believe that death was the injury, certainly the injury starts when he starts feeling the symptoms of mesothelioma. And being a 40-year resident of Alabama, I think it's a fair assumption that that's where he started feeling the symptoms and the symptoms progressed and progressed until he died. What impact, if any, does the public policy of the various states have in considering this question, if any? In other words, the state of Illinois has a very different scheme for distribution than the state of Alabama, to which some errors may be cut out. So Illinois has a different public policy in that regard. Is there any consideration to be given in that regard? Your Honor, there is nothing that I can see in the restatement that says that the court is to consider the substance of the policy of either state in making that determination. Now, there is some language about whether a state, in this case whether Illinois, finds the public policy of Alabama to be repugnant. And I suppose if the court found it to be repugnant to the state of Illinois, not personally repugnant, but repugnant to the state of Illinois, then that's a factor the court can consider. That didn't happen here, though, correct? The judge did not find that? As far as I know. Okay. And so looking at the Section 145 factors, we look at the place where the injury occurred, the place where the conduct occurred, the domicile and place of the parties, and the place where the relationship between the parties is centered. All of those factors, we argue, point to Alabama and not Illinois. And certainly would not be sufficient to overrule the very strong presumption in favor of Alabama because that, again, is where the place of injury occurred. Mr. Steele, what about the argument that is made by the appellee where the injury occurs under Comment B of the restatement of Section 175? The injury occurs where you file the lawsuit. The logical extension of that argument is there's never any reason to apply conflicts of laws because where you file the lawsuit is where you determine the distribution of damages, and I don't think that's the law you're in. What do you think Comment B says? They rely on Comment B of Section 175. Did you see that in their brief? I did. I understood. And how do you distinguish, or do you just flat out disagree with Comment B, or do you think Comment B doesn't say that? We disagree with the appellee's interpretation of Comment B. We believe Comment B supports our position. And why is that? Well, if you give me a second to go through my notes, I'll answer that. You have all the time that the court will give you. Well, again, our position is that Comment B requires the court to look at where the place of injury is. And that's Alabama. Can I add one more thing? Yes. Thank you. Comment F says that where the conduct and injury occur in different states, the local law of the state of injury normally applies. Injury being death. Injury being death, or the symptoms leading to death. Okay. You will have a few minutes to write about Mr. Dripps' argument. So we'll look forward to that. Thank you. All right. Mr. Dripps? May it please the Court. I'm Roy Dripps, and I represent the appellee, Amy McKinney. Many of the arguments made by the appellant in this case might have been properly advanced by the defendants in the underlying case. But in this case, the appellant is not a party. She's a beneficiary. And so she has very limited rights to raise issues of law. She can challenge the Court's factual findings concerning distribution. But in terms of what substantive law should apply, only the personal representative or administrator, and that's the Cushing v. Greyhound case, only the personal representative or administrator can control the litigation of the lawsuit. So while Mr. Steele's arguments are interesting and well thought out, frankly, they just aren't inapplicable. Are you claiming she has no standing to raise these? Yes. Yes, exactly. Only a defendant in the case could raise this, or the actual plaintiff. And which case stands for that proposition? That's the Cushing v. Greyhound, and it's in our brief. Okay. Unless there are some questions I haven't anticipated, all the cases I'm going to discuss are in the brief.  Illinois law should apply in this case because the decedent actually filed the case himself in Illinois while he was alive, alleging injury in Illinois. When he died, the personal representative substituted in, filed an amended complaint, and that's in the record. I believe the paragraph I'm talking about is in the common law record at page 183, invoking the Illinois Wrongful Death Act. So the case was filed in an Illinois court, invoking Illinois law. The defendants settled those cases, which is why we're here, because there is a settlement fund. Those settlements were paid pursuant to the complaint invoking Illinois law. Those payments were made because the plaintiff invoked the Illinois Wrongful Death Act, which provides for certain categories of damage. Those payments represent compensation for those elements of damage, which were all suffered by appellee. And as the trial court found after a hearing, and as a matter of fact, 100 percent of those losses were due to the appellee and none to the appellant. Appellant has not challenged that factual finding as against the manifest weight of the evidence. And in fact, the record more than amply supports it, including the testimony of appellant that she spurned her father. And I'm not going to go into a lot of detail about that. What I am going to talk about is the difference between the appellant's trial court presentation and main brief, and the recall brief in this case, which completely changed their position. And in their main brief and in the trial court, they argued that there is a strong legal presumption that the local law of the state where the injury occurred applies in determining the rights and liabilities of the parties, unless Illinois has a more significant relationship to the occurrence. So we're still talking about the substantive law applicable to the underlying tort. And that was the focus in the trial court as well. But it's the first sentence of section A of their argument in their main brief, and they thought it was important enough to put it in boldface and underline different words. She didn't abandon her claim that the place of injury was where Decedent died. In paragraph 2 of the motion for leave to amend, she says she disagrees that the injury occurrence in the wrongful death case is equated with exposure. Now, what's interesting is she doesn't contest that there was exposure in Illinois. So I think that's a crucial point. And in her motion for leave to amend, she claims that the injury in a wrongful death case is the Decedent's death, which is interesting because Decedent had already filed a lawsuit while he was alive claiming injury in Illinois. Was there another count besides the wrongful death? Was there a survival count? It wasn't a different count, but the complaint, the amended complaint invoked the Wrongful Death Act, the Survival Act, and the Family Expenses Act. Was there settlement divided out for the Survival Act? There were Survival Act settlements, and an appellant will receive money from that. There are obviously lien issues that will attach to the Survival Act that don't attach to the wrongful death. But that's a separate issue, and I'm going beyond the record, but you're asking me a direct question, and I'm answering it, Your Honor. So the answer to your question is yes. Yes, okay. But at the trial court level, the substantive issues of law were argued, obviously, and yet you stand before us and tell us that that shouldn't have happened. Well, it shouldn't. I mean, you know, the judge permitted it, and as appellee, I'm entitled to raise any argument in favor of the judgment that is supported by the record. So that's what I'm trying to do.  So in paragraph 10 of her motion for leave to amend, she requested leave to amend to include allegations of tortious conduct in Alabama. Okay, so we're still focused on the underlying tort and the substantive law that applies there. So this is where I think we agree that comment B to section 175 is important, and it says the place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs. Well, they're trying to say that doesn't say what it says, and the place where the force was set in motion, I think, is evidenced by the fact that Mr. Steeves, during his lifetime, filed an injury case in Illinois for the same facts. But what's important to me is that when we get to their reply brief, they completely pivot and change their approach and try to say that the court should apply de pecage, meaning a different conflict analysis for distribution as for the substantive issues, when all along they've said that it was the underlying tort and the substantive law applicable to that. At page 10 and at page 13 of their reply brief, they say the first issue in this case is what law applies to distribution of the wrongful death settlement proceeds, not what law applies to the underlying tort. Well, we just spent the entire trial court proceedings, the main brief, and Abilene's brief talking about the law applicable to the underlying tort and why that controls. So this comes out of left field, and it's significant because previously Appellant's position was that Alabama law applied because that's where the injury occurred. Alabama law applied to the underlying tort, and they argued how the restatement sections applied to the underlying tort and asked for leave to amend to plead an Alabama tort. So now they're saying, well, never mind all that. So there are a couple of problems. I'm not sure I understand your distinction, because if they argue the substantive law of Alabama applies at the trial court, they're in essence saying that all the way through the distribution then is Alabama law. So I'm not seeing the distinction. With all respect, Justice Cates, I disagree. I think what they're saying is sort of the opposite, that because Alabama law should have controlled the substantive issues, it therefore controls distribution. They never argued for a separate application of Alabama law to distribution aside from the substantive law that was applicable. But, Bob, my question is why do they have to do that if the court agrees that Alabama substantive law applies to the tort, then wouldn't the distribution likewise be applied under Alabama law? It could. It could. But it's interesting, and I'm going to jump ahead in my argument, but Alabama courts would apply Illinois law in this situation, and that's the CCH case that's in the briefs. In CCH, it was a Mississippi asbestos case. Decedent dies, the case settles, and the parties go into an Alabama court to ask for distribution, and the same arguments are made. We should have distribution under Alabama law. And the Alabama Court of Appeals said no. It was a Mississippi case. It was controlled by Mississippi law. It was settled under Mississippi law, and the proceeds were generated in accordance with Mississippi law. So, therefore, Mississippi law should control distribution, which is essentially what I'm arguing here. Everything here was compensation for Illinois damages, and it should be distributed according to Illinois law. So what impact should that decision have on us? How do we take that? Well, it's part of Alabama law, and, you know, it's a court decision in Alabama, saying Alabama law with regard to distribution would defer to the state that created the fund that is being distributed. So I think it's important to recognize that had this case, the distribution issues gone into Alabama, which they could have done because the estate is there, but they didn't do that, and I think the CCH case is why, the Alabama courts would say, well, it was litigated under Illinois law. The funds were paid under Illinois law, and it should be distributed under Illinois law. So appellate claims that I'm old, but I know how to do a word search, so I did. I'm kind of proud of that. Well, let's not get into discussion on age. I don't want to reveal mine anymore. But I can represent to the court that the word doesn't appear anywhere in the trial court record. It's not in a pleading. It's not in any of the transcripts. And so to raise it for the first time in a reply where it really cries out for application of waiver, because we didn't have an opportunity to respond to it in the trial court or in our main brief here. Appellant claims that there's no Illinois case that addresses this, and the Revelsworth case does. I would acknowledge that deals with interpretation of a release, but it is interpretation of the issues from a settlement, and they applied the law applicable to the underlying case to interpret the release. And Moresby, Chapman, and Associates v. Kitzman, that did deal with distribution of attorney fees, and they focused on the most significant relationship to the fund that was created, not the underlying tort. So everything in this case was done in Illinois. The fund was created here. It was created under Illinois law. Mr. Dripps, let me ask you about the Barnes case that you rely on. There, despite the fact that you say we should not do a choice of law analysis here, in Barnes they did do a choice of law analysis. So how is that different? I think Barnes did the same analysis that Appellee is urging the court to do, which is that because in Barnes everything happened in Michigan. Decedent died in Michigan. The case was in Michigan. The settlement was in Michigan. But the estranged wife filed a petition for dissolution in the Illinois probate court. So it's almost like CCH in Alabama. In both decisions, Barnes and CCH both said, look, the law of the place where the lawsuit was filed and the funds were generated controls distribution. That gets into the public policy question you asked Mr. Steele during his argument. And the response is that the Illinois Wrongful Death Act, and public policy is in the Constitution and the statutes adopted by the legislature. The Illinois Wrongful Death Act has a policy favoring distribution of proceeds in proportion to the losses suffered by the survivors. Trial court found that Appellee had no loss, and that's supported because she's the one who spurned her father, wouldn't do anything for him, while Appellee saw him almost every day, took care of him, made his medical appointments, took care of his toileting. He came to her children's events. There was a very close relationship, and the record more than explains that. I'm not going to go into all of the details there. I would point out, too, that the appellate included an appendix of material that was not in the trial court record. In our brief, we requested that the court strike that appendix. It contains a number of documents that I'm not even sure we didn't have an opportunity to verify if they were real. But more important, many of these settlements are confidential. If there's disclosure, you have to notify the other side first. And now they've been dumped into the public record, and I'd ask the court to strike it because it's outside the trial court record. Did you file a separate motion on that? No, it's not a separate motion, Your Honor. It's in the brief. It's a separate section of the brief. You'll have to remind me, did you itemize what needed to be stricken, or did you just generalize? I think I just generally did that because I don't remember anything. It was basically other settlements. I'm just wondering how you expect us to figure that out. Well, I'd ask the court to strike the appendix is what I'm asking. If there are no further questions, I would simply ask the court to affirm the judgment of the Circuit Court of Madison County. Any questions? Okay. Thank you, Mr. Drexel. I forgot to do that with Mr. Steele. That's okay. Mr. Steele, we're not going to talk about age. No, we're not. Your secret is safe with me. Okay. I want to go back to comment B because I think that that is an issue that needs to be discussed because that's where the force is put into play. Correct. I have a note on that right here. And Mr. Dripps argued that very well. I mean, doesn't comment B essentially allow for form shopping? If you really think about it, you can file your lawsuit where you want. Sure. Assuming you can make some connection. And that seems to be what the decedent did here. He was alive when he filed. But the place of filing of the lawsuit does not determine the law that is applied to the distribution of the proceeds. Well, this section of the restatement may disagree with you, though. Well, and if you're— On comment B, what do you think about that argument that Mr. Dripps made? Which argument? On comment B of the section of the restatement where the law that's applied is where you put the force into play. And their argument then being that the force that— Is the filing of the lawsuit. And the fact that your client doesn't even have standing to raise these substantive issues. I have difficulty with that argument because clearly she is a party in interest. She's a necessary party. A necessary party, absolutely. And to say that a party who is a necessary party does not have standing to challenge the distribution seems—I mean, why are we there? To argue the substantive law that would have been applied. And I don't know why she would be limited in that. Why—as a necessary party, why would she not have standing to make that argument? I don't understand the appellee's position. Do you think she has standing to make amendments? That's a different question. Yeah, I figure it was. Yeah, I understand your question, Justice Cates. And how do you answer that? As we indicate in our brief, she is certainly a necessary party. And based upon the fact that she was a necessary party, we requested the court to allow her to amend the complaint. But she doesn't control the litigation. Being a necessary party doesn't make her the person who gets to call the balls and strikes. I understand that, Your Honor. But I would suggest to the court that even a finding that she has no standing would not materially affect our main argument, which is that Alabama law should have been applied, whether or not she— How do you agree that she can't amend? I— Not letting you go on that. I noticed. I would suggest that is not the strongest of arguments. Okay. Thank you. And with that, unless there is another issue that— Oh, could I— You still have some time, yes? Mr. Dripps made reference to the CCH case, an Alabama case. That case does not stand for the proposition that Alabama would apply Illinois law in this case. In that case, the Alabama court ruled that the injury occurred in Mississippi, and so Mississippi law applied. What about the Barnes case where Illinois law was applied? Illinois law was applied, but again, I don't think that case changes anything with regard to our argument. The fact is, again, the presumption is, under the restatement, the law of the state where the injury occurred is presumed to be the law that applies. And nothing in the Section 6 factors changes that presumption. Okay. Questions? No questions. Thank you very much. Thank you, Mr. Steele. Thank you, Mr. Dripps. This matter will be taken under advisement, and we will issue an order in due course.